# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BEVERLY R. ANDERSON,                )
                                    )
       Plaintiff,              )
                                    )   Civil Action No. 08-19 Erie
                                    )
       v.                      )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
       Defendant.              )

## **MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

      This matter is before us a second time on Plaintiff, Beverly R. Anderson's application for widows insurance benefits ("WIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Plaintiff filed an application for WIB on March 21, 2001 on the earnings record of her deceased husband, Roland Anderson (Administrative Record, hereinafter "AR", 14). Her application was denied initially and on reconsideration (AR 47-48, 64-71). Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on December 10, 2003 (AR 23-46). Following this hearing, the ALJ issued a written decision on January 30, 2004 finding that Plaintiff was not entitled to widow's insurance benefits under the Act as she had been married only seven months prior to Mr. Anderson's death (AR 18). Plaintiff's request for review by the Appeals Council was denied (AR 6-9) and she subsequently appealed the ALJ's decision to this Court.

      On May 24, 2005, we held that the ALJ erred in giving the Dead Man's Act preclusive effect with respect to Plaintiff's testimony regarding *verba in praesenti* and remanded the matter to the Agency for further consideration (AR 283-296). A second hearing was held by the ALJ on February 22, 2006, at which time Plaintiff provided further testimony (AR 313-336). Following this second hearing, the ALJ rendered a decision finding that the evidence was not sufficient to show that Plaintiff and Mr. Anderson exchanged words in the present tense for the specific

purpose of creating the legal relationship of husband and wife (AR 273).

The Appeals Council again denied relief (AR 260-262), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we deny the Plaintiff's motion and grant the Defendant's motion.

**I. BACKGROUND**

Our recitation of the factual background herein is taken directly from our previous decision in this matter:

"Plaintiff alleges that she had been married to Mr. Anderson from November 1, 1992, through the date of his death, December 12, 1994 (AR 82-83). In support of her claim, the following evidence was presented to the ALJ:

Plaintiff completed a Statement of Marital Relationship form and represented that on November 1, 1992, she and Mr. Anderson "agreed to live together as husband and wife with the understanding that [it] would be a lifetime commitment" (AR 84). Plaintiff further stated that she and Mr. Anderson made the decision in December 1993 to have a "ceremony" to make their relationship "right in the eyes of God," and the ceremony was performed on May 14, 1994 with family in attendance (AR 88).

In her testimony before the ALJ, Plaintiff testified that she had known Mr. Anderson for fourteen years and that over time a committed relationship developed (AR 28). They purchased a home together in 1986 at 530 High Street in Waterford, Pennsylvania, and began residing together at that address in November 1992 (AR 28). At the time they began living together, Plaintiff also owned a home in Erie, Pennsylvania, and Mr. Anderson owned a home in Fairview, Pennsylvania (AR 29). Plaintiff sold her house in December 1992 and Mr. Anderson sold his house October 1993 (AR 39). With respect to their discussions at the time they began living together, Plaintiff testified that they made a commitment to each other, and "were there for each other through thick or thin, the ups and downs, the peaks and the valleys," that it was for their

"lifetime," and that she considered it a marriage (AR 32). According to Plaintiff, she and Mr. Anderson had discussions about commitment and what it meant to each of them, and Mr. Anderson indicated to her that it meant he was committed to her for his lifetime "like a husband would be to a wife," and that she felt the same (AR 33).

Plaintiff testified that she quit her job in September 1992, and after they moved in together Mr. Anderson assumed support for her and her three children (AR 31-32). She did all the cooking and household chores, and looked after Mr. Anderson physically because he had a bladder problem and needed to be catheterized three times a day, and needed assistance showering (AR 33). Beginning in 1992, they presented themselves to the community as husband and wife, and she referred to herself as "Mrs. Anderson" (AR 36). She continued to sign documents in her former name however until May 14, 1994 (AR 36). During the 1993 Christmas season, they discussed having a ceremony to reaffirm their commitment to one another in front of their family (AR 34). They decided on May 14, 1994, the weekend after her daughter's graduation, so that family could attend the ceremony (AR 34). Plaintiff testified that the ceremony was not in anticipation of any illness that Mr. Anderson may have had, and that his death was a sudden event (AR 44).

Mr. Anderson's siblings completed Statement Regarding Marriage forms regarding their understanding of when Mr. Anderson and Plaintiff began presenting themselves as a married couple (AR 89-94). Leroy Anderson and Jack Anderson indicated that Plaintiff and Mr. Anderson began living together as husband and wife on May 14, 1994, the date of the ceremonial marriage (AR 89-92). According to Jack Anderson, Plaintiff and Mr. Anderson were not living together in November 1992 (AR 91). Marilyn Kressel, Mr. Anderson's sister, stated that she never heard them refer to each other as husband and wife, and that Plaintiff referred to Mr. Anderson as "R.B." (AR 94).

In a statement dated August 30, 2001, Mr. Anderson's daughter, Rolee Luciano, stated that her father and Plaintiff "took up residence together" in November of 1992, and her father

assumed financial responsibility for Plaintiff (AR 226). She further stated that "[t]hey had an extremely loving and caring relationship" and "to someone on the outside," believed that they "appeared as husband [and] wife" (AR 226).

Michelle Tallmadge, an employee of the couple, submitted a statement dated August 24, 2001 and stated that between February 1993 and December 1994, the couple "did live together as husband and wife" (AR 224).

Janet Hall, a friend of the couple since 1987, submitted a statement dated August 27, 2001and stated that Plaintiff and Mr. Anderson "cohabitated" with Plaintiff's three children, and Plaintiff took care of all his needs (AR 225). According to Ms. Hall, Plaintiff and Mr. Anderson lived as husband and wife for many years before they married, and when they "finally did marry" she hosted a reception for them in her restaurant (AR 225).

Plaintiff submitted tax returns for the years 1993 and 1994. Tax returns for the year 1993 reflect that Plaintiff filed under the name "Beverly Hutchinson" and chose "head of household" as her filing status, and Mr. Anderson filed as "single" with no dependents (AR 99-100). In 1994, the couple filed their tax return as a married couple (AR 101).

Plaintiff also submitted bank statements and work invoices from various vendors in support of her claim. The bank statements showed that Plaintiff's statements were sent to the High Street address, and Mr. Anderson's statements were sent to his Fairview address until he apparently changed his address with the bank in November 1993 (AR 102, 152, 126, 130). Mr. Anderson's daughter was listed on his checking account until June 1994, when he replaced his daughter's name with Plaintiff's name (AR 223). Vendor's invoices and/or work orders submitted by Plaintiff for the time frame prior to the ceremonial marriage reflected the following names: "Beverly Anderson,", "Mrs. Roland Anderson," and/or "Mrs. Anderson" (AR 138, 140-141)" (AR 284-286).

The ALJ held a second hearing on February 22, 2006 (AR 313-336). The only new testimony proffered at this second hearing concerned the circumstances surrounding the sale of

Mr. Anderson's house in 1993 and the date Mr. Anderson changed his address on his bank account (AR 322-326; 328).

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

The sole issue in this case is whether the ALJ's conclusion that Plaintiff failed to produce sufficient evidence of a common-law marriage with Mr. Anderson is supported by substantial evidence. In order to be eligible for widow's benefits under 42 U.S.C. § 402(e), an applicant must be at least age sixty, unmarried, not entitled to retirement benefits higher than the widow's primary amount, and the widow of an individual who was fully insured under the Act. "Widow" is defined as the surviving wife of an individual if she was married for a period of not less than nine (9) months immediately prior to the day on which the spouse died. 42 U.S.C. § 416(c)(5); 20 C.F.R. § 404.335(a)(1). Whether a claimant is legally married to a wager earner requires the Commissioner to look to the law of the state where the wage earner had his permanent home at the time of his death. 20 C.F.R. § 404.345; *see also Turner v. Barnhart*, 245 F. Supp. 2d 681, 683 (E.D.Pa. 2003).

In Pennsylvania, a common law marriage can only be created by "an exchange of words in the present tense [*verba in praesenti*], spoken with the specific purpose that the legal relationship of husband and wife is created by that." *Staudenmayer v. Staudenmayer*, 714 A.2d

5

1016, 1021 (Pa. 1998).¹ As stated in *Staudenmayer:*

> ... The common law marriage contract does not require any specific form of words, and all that is essential is proof of an agreement to enter into the legal relationship of marriage at the present time.

*Staudenmayer*, 714 A.2d at 1020 (citation omitted). If there is no evidence of such an *in verba praesenti* exchange, a rebuttable presumption of common law marriage can be established by proof of constant cohabitation and a reputation of marriage that is "not partial or divided but is broad and general." *Id*. at 1020-21. The *Staudenmayer* court observed that where, as here, there is testimony regarding *verba in praesenti,* the presumption based on cohabitation and reputation for marriage is inapplicable:

> ... [T]he burden rests with the party claiming a common law marriage to produce clear and convincing evidence of the exchange of words in the present tense spoken with the purpose of establishing the relationship of husband and wife, in other words, the marriage contract. In those situations, the rebuttable presumption in favor of a common law marriage upon sufficient proof of constant cohabitation and reputation for marriage does not arise.

*Staudenmayer*, 714 A.2d at 1021.

In this case, Plaintiff testified as follows regarding *verba in praesenti*:

> We made a commitment to each other. It was a lifetime commitment and that we were there for each other through thick or thin, the ups and downs, the peaks and the valleys and that it was for our lifetime. ... [W]hen we had the discussions, he – we talked about commitment and what it meant to each of us and what it meant to him was he was committed to me for his lifetime like a husband would be to a wife and I said to him, and I feel the same way. I am committed to you as, as your wife.

(AR 32-33). The ALJ found the following with respect to this testimony:

> I have now considered the claimant's testimony and statements regarding the verba in praesenti, and I find that this evidence is not sufficient to show that she and the wage earner exchanged words in the present tense for specific purpose of creating a legal relationship of husband and wife. As the Court notes, the claimant

---

¹The Pennsylvania legislature amended its statutes to provide that no common law marriages contracted after January 1, 2005 will be valid. 23 Pa.C.S.A. § 1103 (2005). This provision does not affect common law marriages existing prior to January 1, 2005. *Id.*

6

> testified that the words were exchanged at the time she and the wage earner moved into the High Street address in November 2002, signifying a lifelong relationship, and that the wage earner assumed the support of her and her children. However, I note that the claimant continued to list herself as Beverly Hutchinson on her federal tax return for 1993, a period which ended more than a year after the move, and that she continued to list her children as her, not the wage earner's, dependents on that return. The wage earner declared himself as single with no dependents on his 1993 tax return, which directly contradicts the allegation that he considered that a legal relationship of marriage existed in 1993 or that he assumed the support of the claimant's children during that year. The claimant and the wage earner filed a return in 1994 as a married couple, with the children shown as their dependents, but by the time of the filing the ceremony of marriage had taken place. The claimant's name continued to be shown on her bank statements as Beverly Hutchinson through June 1994, shortly after the ceremony in May 1994. The claimant testified that she continued to sign documents as Beverly Hutchinson until the ceremony. The wage earner did not remove his daughter's name from his checking account until June 1994. These facts convince me that the claimant and the wage earner did not intend to create the legal relationship of husband and wife when they moved in together in November 1992 and that that relationship was not created until the ceremony in May 1994. Vendors sent invoices to her using the name Anderson at the High Street address before May 1994, but the claimant and the wage earner did not control what the vendors did. However, the claimant could have, and, in my view, would have changed the name on her tax return and bank accounts from Hutchinson to Anderson, would not have claimed her children as dependents on her 1993 tax return, and would no longer have signed documents as Hutchinson after November 1992 if she and the wage earner intended to create the legal relationship of husband and wife at that time. None of these changes occurred until after the ceremony of marriage. At her hearing before me in February 2006, the claimant stated that in December 1992 she changed the address on the wage earner's bank account to the High Street address, but this does not alter the fact that the changes discussed above did not occur until much later. I find, therefore, that the Court's standard of clear and convincing evidence in support of the claimant's claim of <u>verba in paresenti</u> (*sic*) has not been met.

(AR 273).

Here, as set forth above, the ALJ carefully reviewed numerous instances of conduct inconsistent with the Plaintiff's contention that there had been an "exchange of words in the present tense for the purpose of establishing the relationship of husband and wife." *Staudenmayer*, 714 A.2d at 264. It is the ALJ's responsibility to resolve conflicts in the evidence

and to determine credibility and the relative weights to be given to the evidence. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999); *Mason v. Shalala*, 99 F.2d 1058, 1066 (1993). The ALJ's credibility determinations are entitled to great deference, *see Van Horn v. Schweiker*, 717 F2d 871, 873 (3rd Cir. 1983), and should not be discarded lightly, given his or her opportunity to observe an individual's demeanor. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3rd Cir. 2003). This is particularly true where the ALJ has identified the evidence and reasoning which support his decision. *See Horodenski v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 183, 188-89 (3rd Cir. 2007) (where the ALJ has articulated reasons supporting a credibility determination, that determination is entitled to great deference and will be reversed only in extraordinary cases); *Kosloff v. Bowen*, 1990 WL 72950 at *4 n.1 (E.D.Pa. 1990) (upholding the ALJ's credibility determination regarding the claimant's testimony with respect to a common law marriage), *aff'd*, 922 F.2d 832 (3rd Cir. 1990) (Table case). We therefore find that the ALJ's conclusion that Plaintiff failed to establish, by clear and convincing evidence, the existence of a common law marriage is supported by substantial evidence.

## VI. Conclusion

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEVERLY R. ANDERSON,<br><br>                Plaintiff,<br><br>                v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                Defendant. | Civil Action No. 08-19 Erie |

## **ORDER**

AND NOW, this 16th day of December, 2008, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 8] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 13] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Beverly R. Anderson.

The clerk is directed to mark the case closed.

                                                          s/ Sean J. McLaughlin
                                                        United States District Judge

cm: All parties of record.